MR. JUSTICE SHEEHY,
dissenting:
I dissent.
The bone of contention in this law suit is Continental’s argument that it now owns all of McDonald’s undivided one half interest in the leasehold as it pertains to the NV2 of the NWVi of Section 8, Twn 7 N, R 60 E, in Fallon County, Montana.
I agree that the District Court should be reversed, but it is my view that we should order a summary judgment in this case in favor of Gunnip and his assigns to the effect that Gunnip and his assigns are entitled to 25% of the working interest in the NWV4 Section 8, Twn 7 N, R 60 E.
We should further order a summary judgment to the effect that Continental Oil Company is entitled to 37.5% of the working interest in the said NWV4 of Section 8.
We should further order a summary judgment that the remaining 37.5% of the working interest in the said NWVi is owned by McDonald and his assigns.
The working interest is 84.5% of 100% of production.

General Observations

None of the parties that are involved in his action owns a fee simple title either to the land or minerals. The quarrel in this lawsuit is about the division of the leasehold interest. The res of the lawsuit is the original lease, which had to be kept in force by the lessees, either by development of an oil and gas well or by the payment of delay *146 rentals. We do not have the terms of the original lease before us. We only know from reference in the instruments that an oil and gas lease to the whole of the NV2 of Section 8 (including the NWí4 and the NEVi) was given by William P. Knox, a single man, and Mrs. Marsha Know Orrock and her husband, Robert Orrock, to a Frank H. Becker. Becker apparently assigned the full leasehold interest, subject to the landowners royalty and a 3% overriding royalty to McDonald and Eide, Inc., a corporation, before the commencement of the matters involved this lawsuit.
After Continental drilled, and oil and gas was produced in commercial quantity on the leasehold, the Montana Oil and Gas Commission adopted 160-acre spacing rules for the area. This means that the NWV4 of the section is treated as one spacing unit, and the NEV4 of the section is treated as a separate spacing unit, even though both of these quarter sections were included in the leasehold interest owned by McDonald and Eide, Inc. For the purposes of this lawsuit, we are interested only in the leasehold interest in the NWVi.
Since the spacing unit is 160 acres, a person owning either land or a leasehold interest under the area of the NWV4 is entitled to share in the proceeds from any oil or gas produced in the NWVi in the proportion that either his landowner’s royalty ownership, overriding royalty ownership, or lease ownership bears to 160 surface acres. The denominator is always 160 surface acres.

Facts

The facts in this case must be stated more clearly.
On June 1, 1961, McDonald and Eide, Inc., then the record owner of the leasehold interest, but subject to the landowners royalty and a 3% overriding royalty, ostensibly assigned all of its interest in the oil and gas lease to Vernon M. Eide and Jay Von DeLinde (hereafter Eide and Von DeLinde) in the NV2 of Section 8, Twn 7 N, R 60 E. This assignment was recorded and as far as the record title is concerned, indicated that Eide and Von DeLinde were the successors in interest to all of the interests of McDonald and Eide, Inc., in the oil and gas lease. Thus, Eide and Von DeLinde were the ostensible owners of all of the working interest; in other words after deducting royalty interests, Eide and Von DeLinde were the owners of 84.5% of 100% of the oil and gas rights of the land involved.
However, on July 12, 1955, prior to the ostensible assignment to Eide and Von DeLinde, the corporation McDonald and Eide, Inc. *147 had assigned to H. W. McDonald, a portion of the leasehold interest in the following language:
. . all of its right, title and interest of the original lessee and present owner in and to said lease and rights thereunder, insofar as it covers the south half of the north west quarter (SV2 and NWV4) of Section 8, Twn 7 N, R 60 E, and 50% of its interest undivided in the north half of the north west quarter (NV2 of the NWV4) of Section 8, Twn 7 N, R 60 E, subject also to the 3% overriding royalty reserved ...”
Note that the description in the assignment from the corporation to McDonald related only to the leasehold interest in the NWV4 of the section, and that it was an assignment of an interest in the lease. Under the rules relating to 160-acre spacing units, McDonald thereby became the owner of 120/160, or 75% of the working interest in the whole of the NWXA.
Since McDonald became entitled to 75% of the working interest under the NWVi of the leasehold, it follows that the assignor, McDonald and Eide, Inc., still held the remaining 25% of the working interest in that quarter section.
H.W. McDonald did not immediately file for record in Fallon County the assignment from McDonald and Eide, Inc., to him of a portion of the leasehold interest.
Enter Continental Oil Company in 1962. On February 27, 1962, it entered into a farmout agreement with Eide and Von DeLinde, (as record owners of the whole of the leasehold interest) covering the N V2 of Section 8, Twn 7 N, R 60 E, subject to the overriding royalty.
A farmout in the oil business occurs when the holders of the leasehold interest farmout to another the obligation to drill a well. The consideration in this case was 50% of the working interest in the lease.
Under the terms of the farmout agreement with Continental, Eide and Von DeLinde agreed to assign to Continental an “undivided one-half interest in and to the said lease insofar as it covers said lands.”
In accordance with the farmout agreement, Eide and Von DeLinde did, on May 22, 1962, make an assignment to Continental Oil Company of “an undivided one-half of that certain oil and gas lease” covering the NVfc of the said Section 8. Eide and McDonald further provided:
“Assignee (Continental) agrees to bear and pay an undivided one- *148 half (1V4) of the land owner’s royalty and of the overriding royalty not in excess of three percent (3%) burdening the above described lease.”
Somehow the record before us does not show how Continental Oil learned that H. W. McDonald had an interest in the leasehold. The interest of H.W. McDonald, of course, arose from the aforementioned assignment of July 12, 1955, wherein McDonald and Eide, Inc., had assigned to H. W. McDonald 100% of its leasehold interest in the SV2 of the NWVi of Section 8, and an undivided V2 interest of its leasehold interest in the NV2 of the NWí4 of Section 8. Although this assignment was made in 1955, McDonald had not recorded the instrument and did not record it until the 1960’s. Thus when Continental did its title work on the farmout from Eide and Von De-Linde, the courthouse records did not indicate the McDonald interest in the leasehold.
On learning of the possible McDonald claim to a portion of leasehold interest, Continental obtained from H. W. McDonald a “Ratification and Adoption of Assignment” in accordance with the assignment that it had already obtained from Eide and Von DeLinde. Such a written instrument was executed by McDonald on May 24, 1962, and by it McDonald ratified and confirmed the Eide and Von DeLinde assignment, and went on to say:
“For the same consideration, the undersigned does hereby transfer, assign, set over and convey onto Continental Oil Company an undivided one-half interest in the oil and gas lease above described and in the leasehold estate created thereby on the same terms and conditions as are set forth in the assignment attached hereto and marked exhibit ‘A.’ (Underlines ours.)”
Thus, in May of 1962, Continental thought it had covered all the bases. It had a farmout agreement and assignment from Eide and Von DeLinde for a 50% interest in the leasehold for all of the NVz of Section 8, and at the same time it had a ratification and adoption of assignment from McDonald for the same acreage in case it developed that McDonald did in fact own an interest in the leasehold by virtue of an unrecorded instrument. Continental could relax and go ahead with its drilling program, which it did, and after a well was successfully developed, it felt safe enough to enter into an operator’s agreement with Eide and Von DeLinde.
The operating agreement was made after the successful well was drilled and was dated September 25, 1962. The parties are Continental Oil Company and Eide and Von DeLinde. The instrument *149 describes that Continental has a 50% interest in the leasehold, and contains the following provision in case of failure of title:
“20. Failure of title. In the event of the failure or partial failure of title to any interest subject hereto, the loss of any such title or titles shall be borne proportionately in accordance with the respective undivided interests of the parties in the lease title to which fails (sic) and no party shall be liable to any other for the loss of any such title.”
The roof fell in for Continental Oil Company, as far as Eide and Von DeLinde are concerned, when the District Court in Fallon County determined on December 18, 1970, that the purported assignment to Eide and Von DeLinde from McDonald and Eide, Inc. (the assignment of June 1, 1961,) was void for several reasons. By virtue of that judgment any claim of Continental to a portion of the working interest through Eide and Von DeLinde failed. The interest in the leasehold that was purportedly held by Eide and Von De-Linde was vested by the District Court judgment in Frank Gunnip, as receiver for the corporation, McDonald and Eide, Inc. Continental holds no lease or instrument of any kind signed by Gunnip, his predecessors, or successors that would now serve to limit Gunnip’s interest. The judgment means that Gunnip and his assigns are the sole owners of the working interest in the NEVi of Section 8. It further means that Gunnip and his assigns are the sole owners of an undivided one-half of the working interest in the NVfe of the NWVi of Section 8. Since Gunnip and his assigns own an undivided one-half of the working interest in the NVfe of the NWVi of the leasehold, his leasehold interest in that tract is 40 surface acres of working interest. The proportion of 40 over 160 equals 25%. Gunnip and his assigns are entitled to that amount of working interest irrespective of any other result in this lawsuit.
The remaining interest in the NWVi is owned by H. W. McDonald and his assigns, but subject to the terms of the ratification and adoption of assignment that McDonald had signed for Continental on May 24, 1962.
After the 1955 assignment from McDonald and Eide, Inc., H. W. McDonald owned all of the working interest in the SV2 of the NWVi of Section 8, and an undivided one-half of the working interest in the NV2 of the NWVi of said section. Continental claims that under the ratification agreement signed with McDonald, it is entitled to 50% of the working interest under the SVi, and all of McDonald’s working interest in the undivided one-half of the NV2 of the quarter *150 section. Because McDonald's interest in the NV2 is only an undivided one-half, Continental claims that under its ratification and adoption of assignment agreement with McDonald, it became the owner of 100% of McDonald’s interest in the NV6 of the quarter section.
The fallacy of Continental’s position can be shown in two ways: One, the ratification and assignment signed by McDonald (and by Eide and Von DeLinde) did not constitute nor was it intended to constitute a transfer of the surface acres underlying the lease. Rather it was a transfer of a percentage interest in a leasehold, the lease which is res of this lawsuit, an interest which may be calculated by reference to the surface acres. Two, if Eide and Von De-Linde had in fact a valid ownership of an undivided one-half interest in the NV6 of the quarter section, and H.W. McDonald owned the other undivided one-half interest, under Continental’s position, Continental would have earned from the two sources 100% of the working interest in the NVfc of the quarter section by virtue of its farmout agreement and the assignments. This is absurd.
Giving effect to the intention of the parties, Continental, through the farmout and assignments, could only have earned 50% of the leasehold interest validly held by the parties with whom it contracted. The result is that with respect to the NWV4, Continental owns 50% of the working interest underlying the SV2 of the NWÍ4, and 25% of the underlying leasehold in the NV2 of the said quarter section.
Reduced to acreages and percentages, of the 80 surface acres underlying the SV4 of the quarter section, Continental owns 40 acres of working interest. Of the 40 surface acres representing an undivided one-half interest in the NVfe of the quarter section, Continental owns 20 acres of working interest. It therefore owns a total of 60/160 surface acres in the NWVi or 37.5% of the working interest.
The interest of H.W. McDonald in the NW!4 is subject to subsequent assignments. Those assignments are of record, and there is no contest before us as to the propriety of those assignments. A further lawsuit is not necessary in order to determine those interests and the remand by this Court to determine those interests is quite unnecessary.
There is no need for further extended litigation in this case. There should be no quarrel about the interests of the assigns under Gun-nip, nor of the assigns under McDonald’s 37.5% interest. All that should be left for the District Court to do, in my view, would be to *151 require an accounting and make appropriate division of the monies held back and to be earned. I would so order.
MR. JUSTICE HARRISON joins in the dissent of MR. JUSTICE SHEEHY.